1

2                                                          **E-Filed 01/05/06**

3

4

5

6

7

8                                  NOT FOR CITATION

9                      **IN THE UNITED STATES DISTRICT COURT**

10                 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                                **SAN JOSE DIVISION**

12

13   COUPONS, INC.,                          Case Number C 05-03491 JF

14                     Plaintiff,            ORDER[1] (1) DENYING MOTION TO
                                             DISMISS, AND (2) TRANSFERRING
15          v.                               TO THE UNITED STATES DISTRICT
                                             COURT FOR THE DISTRICT OF
16   ELLEN A EFROS, ESQ., et al.,            COLUMBIA

17                     Defendants.           [Docket No. 7]

18

19

20

21                              **I. BACKGROUND**

22          On August 29, 2005, Defendants Ellen A. Efros, Esq. ("Efros"), Ronald P. Kananen, Esq.

23   ("Kananen"), Rader, Fishman & Grauer, PLLC ("Rader") and Does 1 through 20 removed the

24   instant case from Santa Clara Superior Court pursuant to 28 U.S.C. § 1441(b) and based on

25   diversity jurisdiction, 28 U.S.C. § 1332.  Plaintiff Coupons, Inc. ("Coupons") alleges two claims

26   against Defendants: (1) professional negligence, and (2) breach of fiduciary duty.  Coupons is a

27   _____

28      [1] This disposition is not designated for publication and may not be cited.

1  California corporation with its principal place of business in Palo Alto, California.  Efros is an

2  individual residing in Washington, D.C. and was a member of the Rader law firm until August

3  31, 2005.  Kananen is a resident of Washington, D.C. and, as of November 4, 2005, the date of

4  his declaration, is a member of the Rader law firm.  The Rader law firm is registered in Michigan

5  and has its principal place of business in Bloomfield Hills, Michigan; it does not have any offices

6  in California.  On September 6, 2005, Defendants Efros, Kananen, and Rader filed the instant

7  motion to dismiss for lack of personal jurisdiction and for improper venue; alternatively, they

8  move for transfer the case to the District of Columbia for improper venue or for convenience.

9  Coupons opposes the motion.  The Court heard oral argument on November 4, 2005.

10          In August 1999, Steven Boal ("Boal"), the Chief Executive Officer of Coupons, contacted

11  Kananen for legal representation with respect to prosecution of a patent.  Previously, while

12  working at another law firm, Kananen had done some patent work for Boal.  From 1999 through

13  2005, Coupons paid Rader approximately $160,000 in fees for patent prosecution, trademark

14  registration and related work.  In 2001, Coupons purchased a patent infringement liability

15  insurance policy from Indian Harbor Insurance Company ("Indian Harbor").  As was required by

16  Indian Harbor, Coupons submitted an opinion letter prepared by Kananen describing patents

17  relevant to Coupons's products.  Kananen submitted a similar letter when this policy was

18  renewed in July 2002.  Coupons alleges that Kananen either did not find or did not disclose to

19  Coupons or Indian Harbor patents that would later become the subjects of a patent infringement

20  lawsuit against Coupons.  According to Coupons, this absence of disclosure subsequently

21  influenced Indian Harbor's decision to deny insurance coverage to Coupons for subsequent

22  litigation between Coupons and E-Centives, Inc. ("E-Centives") and Black Diamond CCT

23  Holdings, LLP ("Black Diamond").

24          In November 2002, E-Centives and Black Diamond filed a patent infringement suit

25  against Coupons in the United States District Court for the District of Maryland.  Coupons

26  retained Efros for legal representation in this litigation, and the related engagement letter was

27  signed in California.  During her representation of Coupons in this litigation, Efros traveled to

28

2

Case No. C 05-03491 JF
ORDER (1) DENYING MOTION TO DISMISS, AND (2) TRANSFERRING TO THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
(JFLC1)

1   California on four occasions to conduct depositions.  Coupons alleges that Efros asserted a

2   baseless defense in the answer that she submitted on behalf of Coupons, thereby exposing

3   Coupons to the risk of paying attorney's fees to opposing parties.

4   During her representation of Coupons in the litigation with E-Centives and Black

5   Diamond, Efros began to provide Coupons with insurance coverage advice.  Coupons alleges that

6   Efros took on these duties without having been specifically asked to perform them.  In December

7   2002, Efros notified Marsh Advantage America, Coupons's insurance broker, of the E-Centives

8   and Black Diamond litigation and requested that the broker notify Indian Harbor Insurance of the

9   litigation.  Marsh Advantage America is located in San Francisco, California.  Efros

10  corresponded via e-mail with Boal, Frank Serafin ("Serafin"), the Chief Financial Officer of

11  Coupons at that time, and Jeffrey Weitzman ("Weitzman"), the Chief Operating Officer of

12  Coupons, regarding coverage of the Insurance Harbor insurance policy.  In January 2002, Efros

13  and Kananen consulted with Boal, Serafin, and Weitzman about whether Coupons should submit

14  a claim form with Indian Harbor at that time or wait until it was clear that the attorney's fees

15  would exceed the $500,000 insurance deductible.  Based on advice from Efros and Kananen,

16  Coupons decided not to submit a claim at that time.  Coupons argues that this insurance coverage

17  advice was independent from the legal representation in the E-Centives and Black Diamond

18  litigation; Coupons paid approximately $10,000 for this advice.[2]

19  In December 2003, Efros suggested to Coupons that she contact Indian Harbor regarding

20  insurance coverage, as it was beginning to become clear that litigation expenses would exceed

21  the insurance deductible.  However, at that time, Indian Harbor took the position that Coupons

22  had failed to submit a claim form within the required coverage period.  In the winter and spring

23  of 2004, Efros prepared and submitted a claim form to Indian Harbor and provided materials

24  supporting this claim.  In July 2004, Indian Harbor denied Coupons's insurance claim, basing its

25

26          [2] Defendants have objected to some of the evidence presented in this paragraph.

27  However, as is explained below, the Court need not rule on Defendants' objections in order to
    decide the instant motion.

28

Case No. C 05-03491 JF
ORDER (1) DENYING MOTION TO DISMISS, AND (2) TRANSFERRING TO THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
(JFLC1)

1   decision on what it considered to be a late submission of the claim form and the failure to

2   disclose certain patents.  Coupons currently is engaged in arbitration with Indian Harbor

3   regarding this denial of insurance coverage.  The arbitration is being conducted in San Francisco;

4   Indian Harbor unsuccessfully attempted to transfer the arbitration to Connecticut or Kentucky.

5

6                                        **II. DISCUSSION**

7   **A. Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue**

8          Defendants move to dismiss the instant action for lack of personal jurisdiction, pursuant

9   to Federal Rule of Civil Procedure 12(b)(2), and for improper venue, pursuant to 28 U.S.C. §

10  1391(a).  Because the Court concludes that it does not have personal jurisdiction over

11  Defendants, it will not reach the merits of Defendants' motion to dismiss for improper venue.

12  However, although it does not have personal jurisdiction over Defendants, in the exercise of its

13  discretion and pursuant to 28 U.S.C. § 1406(a), the Court will not dismiss the instant case

14  outright.  Instead, in the interest of justice, it will transfer the matter to the District of Columbia.

15  **1. Personal Jurisdiction**

16         Defendants argue that the Court has neither general nor specific jurisdiction over any of

17  the Defendants.  Coupons contends that the Court has specific jurisdiction over all defendants

18  and that it may have general jurisdiction over Rader.

19         A district court sitting in California may exercise personal jurisdiction over a non-resident

20  defendant if the defendant has "minimum contacts" with California such that maintenance of the

21  suit "does not offend traditional notions of fair play and substantial justice."  *Data Disc, Inc. v.*

22  *Systems Technology Associates, Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977); *see also International*

23  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  If the nonresident defendant's contacts with

24  California are "substantial" or "continuous and systematic," the defendant is subject to "general

25  jurisdiction" in California even if the cause of action is not related to the defendant's activities

26  within the state.  *Data Disc*, 557 F.2d at 1287.  If the defendant's activities within the state are

27  not so pervasive as to subject it to general jurisdiction, it may be subject to "specific jurisdiction"

28

4

if the defendant's contacts with the forum meet the following three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)).

When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff bears the burden of showing that jurisdiction is proper. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). In the context of a motion to dismiss based upon pleadings and affidavits, the plaintiff may meet this burden by making a *prima facie* showing of personal jurisdiction. *Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990); *Data Disc*, 557 F.2d at 1285. In determining whether the plaintiff has made a *prima facie* showing, documents submitted by the plaintiff are construed in the light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *Metropolitan Life*, 912 F.2d at 1064 n.1.

**a.  Specific Jurisdiction**

The first prong of the test for specific jurisdiction requires that the plaintiff establish purposeful availment of or purposeful direction toward the forum state. The phrase "purposeful availment" is often used to include both purposeful availment and purposeful direction, which are two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. A purposeful direction analysis "is most often used in suits sounding in tort." *Id.* The instant action involves two tort claims: (1) professional negligence, and (2) breach of fiduciary duty.[3] Demonstration of purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803

---

[3]  *Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 776 (Ct. App. 1995) ("a breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence.").

Case No. C 05-03491 JF
ORDER (1) DENYING MOTION TO DISMISS, AND (2) TRANSFERRING TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
(JFLC1)

1   (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75 (1984)). A court evaluates

2   purposeful direction under the three-part "effects" test established in *Calder v. Jones*, 465 U.S.

3   783 (1984), requiring "that the defendant allegedly have (1) committed an intentional act, (2)

4   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

5   suffered in the forum state." *Id.* (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th

6   Cir.2002)).

7       Defendants argue that their representation of Coupons in the E-Centives and Black

8   Diamond litigation in Maryland does not subject them to personal jurisdiction in California.

9   They cite several cases involving the question of whether out-of-state attorneys may be subject to

10  personal jurisdiction in California related to litigation that did not occur in California. In *Crea v.

11  Busby*, 55 Cal. Rptr. 2d 513, 516 (Cal. Ct. App. 1996), the court held that a defendant was not

12  subject to personal jurisdiction in California merely because he maintained a law license in

13  California, although he had not practiced law in California in 14 years. The attorney resided in

14  Oregon and was retained by an Oregon resident to file suit in Oregon regarding only Oregon

15  corporations, contracts, and laws. *Id.* at 514. Because this case involves no genuine allegations

16  of affirmative action in California, alleging instead only the passive maintenance of a California

17  law license, it is of little relevance to the instant case.

18      In *Edmunds v. Superior Court*, 29 Cal. Rptr. 2d 281 (Cal. Ct. App. 1994), the court held

19  that a Hawaii attorney who represented a California limited partnership in a case litigated in

20  Hawaii was not subject to personal jurisdiction in California. During the course of this

21  representation, the attorney "came to California [for a deposition], made phone calls and wrote

22  letters to and from this state, and accepted payment from a California client." *Id.* at 290. These

23  facts were not sufficient to establish "purposeful availment of the benefits and protections of

24  California law." *Id.* The court noted that public policy supported its conclusion, reasoning that

25  to decide otherwise "would effectively be to penalize out-of-state attorneys by subjecting them to

26  suit here on a highly attenuated theory." *Id.* The Hawaii attorney also reviewed letters relating to

27  his client's business partnership in California, but explained to his client that he could not give

28

6

1    legal advice about these matters. *Id.* at 284. It was his view "that he was brought into the matter

2    only for the Hawaii litigation, not for the purpose of evaluating the business." *Id*. He "did not

3    author or cause to be sent the disclosure documents, and his comments upon them were de

4    minimis in the context of the entire transaction." *Id*. at 290.

5         In *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), in which a Florida law firm

6    represented a California client in a criminal case in Florida, the court did find that defendant

7    attorneys had purposefully availed themselves of the privilege of conducting activities in

8    California. The court held that "[o]ut-of-state legal representation does not establish purposeful

9    availment of the privilege of conducting activities in the forum state, where the law firm is

10   solicited in its home state and takes no affirmative action to promote business within the forum

11   state." *Id*. at 1363. Neither the "normal incidents" of this legal representation, that "the

12   partnership accepted payment from a California bank [and] made phone calls and sent letters to

13   California," nor the three trips that one of the attorneys took to meet with the client in California

14   were enough to establish purposeful availment. *Id*. at 1362-63. However, the court nonetheless

15   concluded that, considered in the context of the attorneys' "entire 'course of dealing,'" the fact

16   that the attorneys secured their payment from the client with a deed of trust that encumbered the

17   client's California home was sufficient to "'invok[e] the benefits and protections' of the laws of

18   California for the purposes of jurisdiction." *Id*. at 1364 (quoting *Burger King v. Rudzewicz*, 471

19   U.S. 462, 475 (1985)).

20        Coupons directs this Court's attention to *Brown v. Watson*, 255 Cal.Rptr. 507 (Cal. Ct.

21   App. 1989), in which the California Court of Appeal determined that Texas attorneys could be

22   subject to personal jurisdiction in California for their representation of California clients in

23   litigation occurring in Texas. The Texas attorneys were associated with California attorneys for

24   the purpose of representing the California clients in Texas. *Id*. at 509. The court noted that

25   jurisdiction in California may arise "when the defendant has caused an effect in the state by an

26   act or omission which occurs elsewhere." *Id*. at 512 (citing *Sipple v. Des Moines Register &*

27   *Tribune Co.*, 147 Cal.Rptr. 59 (Cal. Ct. App. 1978)). It held that defendant attorneys' omissions

28

7

1   in Texas and their contacts with California—which included the retention of the Texas attorneys

2   by the clients in California through their California attorneys, telephone and mail correspondence

3   with the clients in California for a period of four years, material furnished for the litigation from

4   California, and fees paid through a fee-splitting arrangement with the California attorneys—

5   together were sufficient to make personal jurisdiction over the Texas attorneys in California

6   constitutionally permissible. *Id*. at 512-13.  However, in *Sher*, the Ninth Circuit expressly

7   declined to follow *Brown*, stating: "Although we address jurisdiction in this case pursuant to the

8   California personal jurisdiction statute, we are not bound by the decisions of California courts;

9   the ultimate question here is one of federal constitutional law." *Sher*, 911 F.2d at 1363.

10       In the instant case, Defendants argue that they are not subject to personal jurisdiction in

11   California because they did not solicit business in California, they do not hold California law

12   licenses, and their communications with Coupons in California were the "normal incidents" of

13   legal representation.  The Court agrees with Defendants that the mere representation of a

14   California client in a court outside of California is insufficient to establish purposeful direction.

15   Coupons, however, contends that Defendants did more than merely represent them in their

16   litigation with E-Centives and Black Diamond in Maryland.  It identifies three facts that

17   purportedly distinguish the instant case from a case in which the defendants merely represented

18   plaintiffs in a single litigation.  First, Coupons alleges that Efros reached out to California to give

19   advice to Coupons regarding coverage of the Indian Harbor insurance policy.  This insurance

20   policy was purchased through a California insurance broker and is arguably controlled by

21   California law,[4] although Indian Harbor is itself appears to be a Kentucy corporation.  Second,

22   Coupons alleges that Defendants' representation of Coupons included prosecution of Coupons's

23   patent application and advice regarding intellectual property.  Third, Coupons alleges that

24   Rader's website "promotes the firm as a sophisticated worldwide intellectual property law firm

25

26       [4] Citing relevant authority, Coupons states: "Although there is no choice of law provision
    in the insurance policy, California law applies because Coupons' premiums were paid from

27   California, losses were suffered in California, and benefits due under the policy would be paid in
    California."

28

8

1   with more than 40 attorneys and providing services to companies in more than 220 countries."

2       Coupons's allegation that Efros reached out to California to give insurance coverage

3   advice is insufficient to establish purposeful direction in California.  Defendants object to the

4   some of the evidence used to support Coupons's allegation that Efros affirmatively and

5   spontaneously initiated her role in giving Coupons advice regarding the Indian Harbor insurance

6   policy.  However, it is not necessary for the Court to rule on these objections.  Even if Efros

7   affirmatively and spontaneously gave advice to Coupons regarding the insurance policy, such

8   action was incident to her representation of Coupons in the E-Centives and Black Diamond

9   litigation in Maryland; it does not constitute an intentional act expressly aimed at California.

10  Thus, this Court does not have personal jurisdiction over Efros.

11      Coupons alleges generally and vaguely that Defendants Kananen and Rader provided

12  legal services prior to the litigation with E-Centives and Black Diamond:

13          Kananen and Rader performed a number of tasks for Coupons related to
            prosecution of its patent and registration of numerous trademarks between August
14          1999 and February 2005.  Coupons' business development and success is related
            in no small part to protection of its intellectual property.  Kananen's advice on
15          Coupons' intellectual property was therefore of critical importance to Coupons.
            Coupons paid Rader approximately $160,000 in fees for Rader's non-litigation
16          work related to Coupons' intellectual property between August 1999 and February
            2005.
17

18  Boal Dec. ¶ 6.  However, contrary to Coupons's suggestion, this pre-existing legal relationship

19  does not establish that "Rader, Efros and Kananen should have reasonably anticipated being

20  subject to California's jurisdiction in the event of any malpractice."  First, it has no bearing on

21  whether Efros is subject to personal jurisdiction in California, because there is no allegation that

22  Efros had a relationship with Coupons prior to the litigation with E-Centives and Black

23  Diamond.  Second, it is insufficient to establish that Kananen or Rader purposefully availed

24  themselves "of the privilege of conducting activities within [California], thus invoking the

25  benefits and protections of its laws," *Schwarzenegger*, 374 F.3d at 802, or purposefully directed

26  their activities to California.  Coupons does not allege that Kananen or Rader reached out to

27  California to provide any of these services.  Instead, Coupons describes the initiation of the legal

28

9

1  relationship as follows: "In approximately August 1999, I [Boal] contacted [Kananen] of [Rader]

2  to represent Coupons with respect to prosecuting its patent. I was familiar with Kananen at that

3  time because he had performed some patent work for me prior to his joining Rader." Boal Dec. ¶

4  4.

5       Rader's website does nothing to establish that Efros, Kananen, or Rader purposefully

6  directed acts toward California. Coupons argues that "a website plus 'something more' can

7  subject a party to jurisdiction in California." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316,

8  1322 (9th Cir. 1998). However, a website itself is not an act of purposeful direction. *Cybersell,*

9  *Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) ("Creating a site, like placing a product

10  into the stream of commerce, may be felt nationwide-or even worldwide-but, without more, it is

11  not an act purposefully directed toward the forum state.").

12       Accordingly, the Court concludes that Coupons has not established that any of the

13  Defendants purposefully directed acts toward California in order to subject themselves to

14  personal jurisdiction in California. Because Coupons has not satisfied the first prong, it is not

15  necessary to reach either the second or the third prongs of the test for specific jurisdiction.

16  **b.  General Jurisdiction**

17       Coupons requests that the Court permit Coupons to engage in discovery in order to

18  establish that Rader is subject to general jurisdiction in California. Coupons has submitted a

19  declaration by attorney Louise A. Warren in which she states that Rader has represented clients

20  in this district in at least two recent cases. Warren Decl. ¶ 3. However, even if Coupons

21  establishes general jurisdiction over Rader, which seems unlikely considering the evidence

22  presently before the Court, this would not establish personal jurisdiction over Efros and Kananen.

23  The Court concludes that it would not be a prudential use of litigation and court resources to

24  permit discovery on this issue.

25

26

27

28

10

1    **B. Motion to Transfer Venue for Convenience**

2          Defendants move, in the alternative, to transfer the instant case to the District of

3    Columbia for convenience, pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the

4    convenience of parties and witnesses, in the interest of justice, a district court may transfer any

5    civil action to any other district or division where it might have been brought."  On a § 1404(a)

6    motion, a plaintiff's choice of forum is ordinarily accorded substantial weight, and a court will

7    not transfer a case unless the "convenience" and "justice" factors tip strongly in favor of the

8    transfer.  *Florens Container v. Cho Yang Shipping*, 245 F.Supp.2d 1086, 1092 (N.D. Cal. 2002);

9    *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981); *Decker Coal Co. v.*

10   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Coupons opposes Defendants'

11   motion to transfer pursuant to § 1404(a) on the ground that Defendants have not established that

12   the convenience of the desired court clearly outweighs the convenience fo the plaintiff's chosen

13   forum.

14          However, Defendants need not establish the convenience of transferring because this

15   Court presently has only two options: (1) dismiss the case for lack of personal jurisdiction, or (2)

16   transfer venue.  When the district court lacks personal jurisdiction over defendants, as it does in

17   the instant case, transfer pursuant to 28 U.S.C. § 1406(a) is appropriate.  *See, e.g., Nelson v.*

18   *International Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983).  Section 1406(a) provides that "[t]he

19   district court of a district in which is filed a case laying venue in the wrong division or district

20   shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in

21   which it could have been brought."  The Court may transfer venue *sua sponte.  Costlow v. Weeks*,

22   790 F.2d 1486, 1488 (9th Cir. 1986); *see also Caldwell v. Palmetto State Sav. Bank of South*

23   *Carolina*, 811 F.2d 916, 919 (5th Cir. 1987).  Coupons had notice that this case may be

24   transferred, and has had an opportunity to respond to the challenges both to personal jurisdiction

25   and to venue.  Accordingly, this Court evaluates the instant motion to transfer as if it had been

26   brought pursuant to 28 U.S.C. § 1406(a).  This Court has jurisdiction to transfer this case to a

27   different district because has subject matter jurisdiction over the instant case, pursuant to 28

28

Case No. C 05-03491 JF
ORDER (1) DENYING MOTION TO DISMISS, AND (2) TRANSFERRING TO THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
(JFLC1)

1    U.S.C. § 1332.  *Hernandez v. Campbell*, 204 F.3d 861, 865 n.6 (9th Cir. 2000) ("Section 1406(a)

2    only allows transfer where the first court has subject matter jurisdiction over the action.").

3            The Court concludes that it is in the interest of justice to transfer the instant case, rather

4    than dismiss it, because Coupons's arguments that the Court has personal jurisdiction over

5    Defendants were not frivolous and its claims in the instant case are potentially meritorious.  The

6    District of Columbia is an appropriate venue pursuant to 28 U.S.C. § 1391(a).  The District of

7    Columbia, where the vast majority of the litigation services at issue in the instant litigation was

8    performed, Efros Decl. ¶ 3 and Kananen Decl. ¶ 3, is "a judicial district in which a substantial

9    part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).

10   Accordingly, the Court will grant Defendants' motion to transfer the instant case to the District

11   of Columbia, pursuant to 28 U.S.C. § 1406(a) rather than § 1404(a).

12

13                                       **IV. ORDER**

14           Good cause therefore appearing, IT IS HEREBY ORDERED that Defendants' motion to

15   dismiss for lack of personal jurisdiction or, in the alternative for improper venue, is DENIED.  In

16   the interests of justice and on the Court's own motion, it is hereby ordered that the instant matter

17   be transferred to the United States District Court for the District of Columbia

18

19

20   DATED: January 5, 2006

21

22

23                                       /s/ electronic signature authorized
                                         JEREMY FOGEL
24                                       United States District Judge

25

26

27

28

                                              12

1    This Order has been served upon the following persons:

2    Dennis M. Cusack              dcusack@fbm.com, adugan@fbm.com; calendar@fbm.com;
                                   lwarren@fbm.com
3
     Neil A. Goteiner             ngoteiner@fbm.com, karentsen@fbm.com; calendar@fbm.com
4
     Mark J. Hancock              mark.hancock@sdma.com, steven.wasserman@sdma.com;
5                                 marion.tate@sdma.com

6    Leila Narvid                 leila.narvid@sdma.com

7    Louise Anne Warren           lwarren@fbm.com, calendar@fbm.com

8    Steven D. Wasserman
     Sedgwick Detert Moran & Arnold
9    One Embarcadero Center
     16th Floor
10   San Francisco, CA 94111-3628

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-03491 JF
ORDER (1) DENYING MOTION TO DISMISS, AND (2) TRANSFERRING TO THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA
(JFLC1)